[Cite as *State v. Hargraves*, 2020-Ohio-3569.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. CT2019-0045 |
| | : | |
| RICHARD HARGRAVES | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Muskingum County
                             Court of Common Pleas, Case No.
                             CR2019-20



JUDGMENT:                    AFFIRMED



DATE OF JUDGMENT ENTRY:      June 30, 2020



APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

D. MICHAEL HADDOX                       JAMES A. ANZELMO
MUSKINGUM CO. PROSECUTOR                ANZELMO LAW
TAYLOR P. BENNINGTON                    446 Howland Drive
27 North Fifth St., P.O. Box 189        Gahanna, OH 43230
Zanesville, OH 43701

*Delaney, J.*

{¶1} Appellant Richard Hargraves appeals from the April 24, 2019 Entry of the Muskingum County Court of Common Pleas. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶1} In October 2018, appellant was convicted of domestic violence against his mother in Zanesville Municipal Court Case Number CRB 1801372. Appellant stipulated to the prior conviction at trial.

{¶2} The instant case involves appellant, his sister Kelly Hargraves ("Kelly"), his minor niece "Jane Doe," and his father, Richard Hargraves, Jr. ("Rick"). Doe was age 3 at the time of these events. In January 2019, appellant, Kelly, and Jane Doe lived together in their childhood home on Cliffwood Avenue in Zanesville. Appellant's mother had moved out after the October incident. Kelly frequently complained that appellant had an alcohol problem and was belligerent when drunk. The siblings' parents, although divorced, would intervene and offer Kelly and Jane Doe different places to stay when appellant caused problems.

{¶3} On January 8, 2019, Kelly and Jane Doe spent the day together in Columbus, arriving home around 10:00 p.m. Kelly noted upon entering the house that appellant was "drinking and partying" alone, talking loudly to himself. Kelly asked appellant not to bother her and Doe because they were tired and wanted to go to bed. In the three-bedroom home, Kelly and Doe each had a bedroom to themselves. The third bedroom was used as a walk-in closet. Appellant slept on the couch in the living room. This evening, Kelly went into Doe's room and laid down with her.

{¶4}   Kelly did not fall asleep because appellant continued to be loud and she heard the family's dogs fighting in the living room.  Usually the dogs were kept outside. Appellant let the dogs into the house and walked back and forth throughout the house, still talking loudly to himself.  He threw bottle caps into the bedroom where Kelly and Doe were trying to sleep.  He stood at the bedroom door, muttering and blowing cigarette smoke into the room.  He threw chicken bones onto the bedroom floor to encourage the dogs to come into the room and disturb Kelly and Doe.  Kelly laid with her eyes closed, ignoring appellant and telling him to leave them alone.  Appellant repeatedly said "Fuck you, fuck your baby, I'm going to get rid of you."

{¶5}   Kelly called her father Rick and told him appellant was drunk, belligerent, and bothering her and the baby.  Rick said she and the baby were welcome to come to his house, but Kelly declined because it was now around 5:00 a.m. and she just wanted to sleep. Kelly heard the dogs again in the living room and got up to take one dog outside and put the other in the basement.  As she did this, appellant stood in the bedroom doorway repeating "fuck you and fuck your baby."  Appellant then pushed over a shelf onto the bed where the baby lay, and items fell off the shelf onto the bed and floor.  Jane Doe "yelped" but was not injured.

{¶6}   Kelly called Rick again and told him she intended to call police.  She then called 911.  Appellant overheard the calls and was enraged, calling Kelly a "snitch." Appellant and Kelly fought in the living room.  Appellant pushed Kelly and swung at her with his left hand, but she blocked the strike.  He hit her on the arm with his fist as their father came into the house.

{¶7}  Rick grabbed appellant in a "bear hug" to attempt to stop the fight.  At trial, Rick was reluctant to testify and minimized the events.  Kelly testified appellant jumped on the couch and hit their father; Rick testified that he only intervened in the fight and was not struck by appellant.  Rick had visible injuries to his face which Kelly testified were caused by appellant; Rick testified he was scratched by someone's nail but asserted appellant did not cause his injuries.

{¶8}  As Zanesville police arrived, Kelly stood on the sidewalk, Rick on the porch, and appellant in the doorway of the residence.  The police asked appellant to cooperate; when it appeared he wouldn't, he was taken to the ground and cuffed.  Kelly went to the Zanesville Police Department several hours later to complete a Domestic Violence Complaint Form.

{¶9}  Police officers who responded to the scene testified appellant was highly intoxicated and Kelly was very upset.  She told them her brother knocked over a shelf and fought with their father.  Police observed and photographed "fresh injuries" on Rick's face.  Appellant refused to voluntarily come away from the doorway of the residence and police were afraid he would barricade himself inside, so they took him to the ground and cuffed him.  Appellant was so intoxicated he had to be physically helped to the police car; he was argumentative and it was difficult to understand his slurred speech.  At the scene, Kelly provided a verbal statement that he stood outside her bedroom throwing items in, then came inside the room to pull down a shelf which fell onto Jane Doe.  Police observed visible injury to Rick but not to Kelly or Jane Doe.  They photographed the victims and the interior of the residence, including the shelf and disarray in the bedroom.

{¶10} Appellant was charged by indictment with three counts of domestic violence pursuant to R.C. 2919.25(A), all felonies of the fourth degree. Each count of the indictment notes appellant has a prior conviction of domestic violence in October 2018 and notes the victim of the pertinent offense. Count I relates to Jane Doe, Count II relates to Kelly, and Count III relates to Rick. Appellant entered pleas of not guilty.

{¶11} Appellant orally requested new counsel and the trial court heard the matter on March 4, 2019. On March 5, 2019, the trial court overruled appellant's oral motion and ruled that defense trial counsel would remain in place until further order of the court. Co-counsel was appointed on March 14, 2019.

{¶12} The matter proceeded to trial by jury. Appellant moved for a judgment of acquittal pursuant to Crim.R. 29(A) upon the close of appellee's evidence and at the close of all of the evidence; the motions were overruled. Appellant was found guilty upon Counts I and II, and not guilty upon Count III. Sentencing was deferred pending a pre-sentence investigation.

{¶13} A sentencing hearing was held on April 22, 2019 and appellant was sentenced to two consecutive prison terms of 18 months each, for a total aggregate sentence of 36 months.

{¶14} Appellant now appeals from the judgment entries of conviction and sentence.

{¶15} Appellant raises five assignments of error:

**ASSIGNMENTS OF ERROR**

{¶16} "I.   HARGRAVES' CONVICTIONS ARE BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION."

{¶17} "II.   HARGRAVES' CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATE CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION."

{¶18} "III. THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE PRIOR BAD ACTS OF HARGRAVES, IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION SIXTEEN, ARTICLE ONE OF THE OHIO CONSTITUTION."

{¶19} "IV.   THE TRIAL COURT ERRED BY BARRING HARGRAVES FROM INTRODUCING EVIDENCE MATERIAL TO HIS DEFENSE, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS, UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION, AND HIS RIGHT TO A FAIR TRIAL, AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION."

{¶20} "V.   THE TRIAL COURT UNLAWFULLY ORDERED HARGRAVES TO SERVE CONSECUTIVE SENTENCES, IN VIOLATION OF HIS RIGHTS TO DUE

PROCESS, GUARANTEED BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

## ANALYSIS

### I., II.

{¶21} Appellant's first two assignments of error are related and will be considered together. Appellant argues his domestic violence convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. We disagree.

{¶22} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶23} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly

lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶24} Appellant was found guilty upon two counts of domestic violence pursuant to R.C. 2919.25(A), which states, "No person shall knowingly cause or attempt to cause physical harm to a family or household member."  Appellant's conviction upon Count I relates to his offense against his niece, Jane Doe, and his conviction upon Count II relates to his offense against his sister, Kelly.  Appellant was found not guilty upon Count III, domestic violence against his father, Rick.

{¶25} Appellant argues the record is devoid of evidence that he caused or attempted to cause physical harm to Jane Doe, the minor child, acknowledging that "[a]t most, [appellant] knocked a shelf down on a bed where [Jane Doe] was."  Brief, 5.  The record includes appellee's Exhibits 5 and 6, photos of the bedroom including the toppled piece of furniture described by witnesses as a "shelf" or a "stand."  The item is a unit of three shelves, fallen across the bed, with numerous items scattered underneath.  The uncontroverted evidence established Jane Doe was laying in the bed when appellant pushed the unit over as he repeated "fuck you and fuck your baby."  It is readily apparent from the photos that if the unit had fallen upon a 3-year-old on the bed, she could have been seriously injured.  The jury could reasonably find that in pulling over the shelf, appellant attempted to cause physical harm to Jane Doe.

{¶26} Appellant further argues there is no evidence he caused or attempted to cause physical harm to Kelly.  Kelly testified that appellant attempted to strike her twice, once making contact with his fist against her arm.  The weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough,* 95 Ohio St.3d 227, 2002–Ohio–2126, 767 N.E.2d 216, ¶ 79.  Moreover, the testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Cunningham,* 105 Ohio St.3d 197, 2004–Ohio–7007, 824 N.E.2d 504, at ¶ 51–57. Here, appellee's evidence established appellant attempted to strike Kelly, and succeeded.  See, *State v. Mowls*, 5th Dist. Stark No. 2017CA00019, 2017-Ohio-8712, ¶ 42.

{¶27} Appellant further points to minor discrepancies in Kelly's statements in the 911 call, to police at the scene, in her Domestic Violence Victim Statement, and at trial. As we observed in *State v. Frank*, 5th Dist. No. CT2017-0102, 2018-Ohio-5148, 127 N.E.3d 363, at ¶ 47, any inconsistencies in the witnesses' accounts were for the trial court to resolve. *Id.*, citing *State v. Dotson*, 5th Dist. Stark No. 2016CA00199, 2017-Ohio-5565, 2017 WL 2815197, ¶ 49. Inconsistencies in the testimony do not establish appellant's conviction is against the manifest weight of the evidence. *Dotson*, supra, 2017-Ohio-5565, at ¶ 50.  "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." *State v. Brindley,* 10th Dist. Franklin No. 01AP-926, 2002-Ohio-2425, 2002 WL 1013033, ¶ 16. We defer to the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraph one of the syllabus. When assessing witness credibility, "[t]he choice

between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan,* 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." *State v. Pizzulo,* 11th Dist. Trumbull No. 2009-T-0105, 2010-Ohio-2048, 2010 WL 1839440, ¶ 11. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. *Id.*

{¶28} Upon our review of the entire record, we conclude appellant's domestic violence convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. Appellant's first and second assignments of error are overruled.

III.

{¶29} In his third assignment of error, appellant argues the trial court erred in admitting other-acts evidence of his assaults upon two inmates at the jail. We disagree.

{¶30} Ptl. William Baron was appellee's first trial witness. Baron testified that due to appellant's intoxication and argumentativeness, he was arrested and taken to jail within minutes of the arrival of police to the scene. The prosecutor then asked, "What happened at the jail," and defense trial counsel objected. The trial court overruled the objection and Baron testified appellant was booked into jail. The prosecutor continued, "Then what?" and defense trial counsel objected again. The objection was overruled. Baron testified appellant was placed in a holding cell with two other inmates who were asleep due to the early-morning hour. Appellant entered the cell and began punching the two inmates with his fists almost immediately, unprovoked.

{¶31} Appellant argues admission of this evidence violates Evid.R. 404(B), which states, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶32} As with any other type of evidence, admission of "other acts" testimony must not only meet the prerequisites of Evid.R. 404(B), but it must also meet the prerequisites of Evid.R. 403(A) which requires the exclusion of relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice."

{¶33} "Trial court decisions regarding the admissibility of other-acts evidence under Evid.R. 404(B) are evidentiary determinations that rest within the sound discretion of the trial court. Appeals of such decisions are considered by an appellate court under an abuse-of-discretion standard of review." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, syllabus.

{¶34} The Ohio Supreme Court established a "three-step analysis" for trial courts considering the admission of other-acts evidence under Evidence Rule 404(B):

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented

for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. See Evid.R 403.

> *State v. Williams*, 2012-Ohio-5695, ¶ 19-20, 134 Ohio St.3d 521, 983 N.E.2d 1278.

{¶35} In the instant case, appellant argues evidence of his attack on inmates at the jail is irrelevant to the domestic violence offenses and tended to show he acted in conformity with a propensity to commit violence.  Appellee argued at trial, and responds on appeal, that the evidence was relevant to appellant's state of mind in the immediate aftermath of the domestic violence incident, demonstrating appellant was intoxicated and combative.  While the jail evidence was superfluous in light of the witnesses' consistent testimony about appellant's level of intoxication, it rebutted appellant's argument at trial that Kelly exaggerated the extent of appellant's actions and belied appellant's claims that he was merely "causing trouble" and a nuisance.

{¶36} We further conclude that even if the challenged testimony about events at the jail violated Evid.R. 404(B), the error was harmless. The Supreme Court has stated that "the real issue when Evid.R. 404(B) evidence is improperly admitted at trial is whether a defendant has suffered any prejudice as a result. If not, the error may be disregarded as harmless error. And while courts may determine prejudice in a number of ways and use language that may differ, they focus on both the impact that the offending evidence had on the verdict and the strength of the remaining evidence." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 25.  In this case, appellee's evidence of

the domestic violence was overwhelming, including testimony of Kelly, her father, and responding officers, and photos of the damage and injuries inflicted by appellant. We find that any unduly prejudicial effect from the challenged testimony "would have been marginal" in light of the strength of appellee's evidence. See, *State v. Barnett*, 10th Dist. Franklin No. 19AP-365, 2020-Ohio-1468, ¶ 42.

{¶37} The trial court did not err in overruling appellant's objection to the jail evidence.  Appellant's third assignment of error is overruled.

IV.

{¶38} In his fourth assignment of error, appellant argues the trial court erred in disallowing evidence pertinent to his defense.  We disagree.

{¶39} Decisions regarding the admissibility of evidence at trial are within the broad discretion of the trial court and will be upheld absent an abuse of discretion and material prejudice. *State v. Lang,* 129 Ohio St.3d 512, 2011–Ohio–4215, 954 N.E.2d 596, ¶ 86.

{¶40} At trial, appellant sought to admit Defendant's Exhibit E, the Ohio Uniform Incident Report (police report) about the incident.  The exhibit does not contain any written statements.  We have reviewed the exhibit and it is cursory at best. The report identifies the time, date, location, and persons involved, and the narrative simply states: "On the above, date, time and location a known person did: cause or attempt to cause physical harm to a family or household member.  Resist the lawful arrest of his person."  (*Sic* throughout).  In the report's description of Kelly, the box labeled "If injured; state injuries," indicates "none."  Appellant sought to admit Exhibit E as evidence of Kelly's alleged inconsistent statements, apparently that she did not tell police she was injured by appellant.  The trial court declined to admit the report because there was no evidence

Kelly reviewed the police report, to what extent she contributed to it, or that she ever saw it. T. 352-353.

{¶41} On appeal, appellant argues the trial court's decision interfered with his right to present a complete defense because Exhibit E "denotes that Kelly indicated no injuries from the incident with [appellant]." We agree with the trial court's decision and find no indication in the record that Kelly wrote or reviewed the material contained in Defense Exhibit E, thus the exhibit is not properly evidence of any "inconsistent statement."

{¶42} Appellant's fourth assignment of error is overruled.

V.

{¶43} In his fifth assignment of error, appellant argues the trial court erred in imposing consecutive sentences. We disagree.

{¶44} Appellant was convicted upon two counts of domestic violence in Counts I and II, both felonies of the fourth degree. The trial court imposed consecutive prison terms of 18 months each. "[A]ppellate courts must adhere to the plain language of R.C. 2953.08(G)(2)." *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, ¶ 7. An appellate court may only modify or vacate a sentence if it finds by clear and convincing evidence that the record does not support the sentencing court's decision. *Id.* at ¶ 23. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *State v. Silknitter*, 3rd Dist. Union No. 14–16–07, 2017–Ohio–327, ¶ 7, citing *Marcum, supra.* Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but does not require the

certainty of "beyond a reasonable doubt." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶45} In the instant case, appellant argues the trial court erred in imposing consecutive terms because the prison terms are disproportionate to the harm suffered by Kelly and Jane Doe. Appellant implicitly argues the victims were not injured, therefore he should not serve consecutive terms. We note appellant does not argue that the trial court failed to make the proper findings; instead, he disagrees with the weight afforded to those findings. "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 16 N.E.3d 659, 2014-Ohio-3177, syllabus.

{¶46} In Ohio, there is a statutory presumption in favor of concurrent sentences for most felony offenses. R.C. 2929.41(A). The trial court may overcome this presumption by making the statutory, enumerated findings set forth in R.C. 2929.14(C)(4). *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 23. R.C. 2929.14(C)(4) concerns the imposition of consecutive sentences and provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and

to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶47} In this case, the record does establish, and appellant admits, that the trial court made the findings required by R.C. 2929.14(C)(4) at the time it imposed consecutive sentences.

{¶48} We also note that in the sentencing entry, the trial court found that consecutive sentences are necessary to protect the public from future crime or to punish the offender; are not disproportionate to appellant's conduct and to the danger he poses to the public; and at least two of the multiple offenses were committed as part of

one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct would adequately reflect the seriousness of appellant's conduct.

{¶49} Upon imposing the consecutive terms, the trial court noted appellant has a prior felony conviction for which he served a prison term. The instant offenses occurred in January 2019, after appellant had very recently been convicted of domestic violence in October 2018 against his mother. The instant offenses were committed against appellant's sister and his three-year-old niece. In the October case, appellant was put on probation but violated almost immediately and was sent to jail for 50 days. Appellant also had a lengthy history of misdemeanor convictions including resisting arrest, assault, and criminal damaging.

{¶50} Based on our review, we find that the record demonstrates that the trial court made the requisite findings. The sentence was within the statutory range. Moreover, the record reveals that the trial court properly considered the statutory purposes and factors of felony sentencing, and the decision is supported by clear and convincing evidence. Accordingly, we find that the trial court did not err in the imposition of appellant's prison sentence, including imposition of consecutive terms, and did not fail to consider the statutory factors.

{¶51} Appellant's fifth assignment of error is overruled.

**CONCLUSION**

{¶52} Appellant's five assignments of error are overruled and the judgment of the Muskingum County Court of Common Pleas is affirmed.

By:  Delaney, J.,

Hoffman, P.J. and

Gwin, J., concur.

*Hoffman, P.J., concurring*

**{¶53}** I concur in the majority's analysis and disposition of Appellant's first, second, fourth, and fifth assignments of error. I further concur in the majority's disposition of Appellant's third assignment of error, but only partially concur with its analysis.

**{¶54}** The majority apparently concludes the other acts evidence regarding Appellant's assault of inmates at the jail was permissible to rebut Appellant's argument Kelly exaggerated the extent of Appellant's actions and his claim he was merely "causing trouble" and a nuisance. (See Maj. Op. at ¶35). Unlike the majority, I find this was impermissible other acts evidence.

**{¶55}** However, I agree with the majority admission of the testimony about events at the jail constituted harmless error. Accordingly, I concur in its decision to overrule Appellant's third assignment of error.