**[Cite as *State v. Sharrer*, 2025-Ohio-1114.]**

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Robert G. Montgomery, P.J. |
| Plaintiff - Appellee | : | Hon. Kevin W. Popham, J. |
| | : | Hon. David M. Gormley, J. |
| -vs- | : | |
| | : | |
| THOMAS L. SHARRER, | : | Case No. CT2024-0116 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Muskingum Court of
                                Common Pleas, Case No. CR2024-
                                0369

JUDGMENT:                       Affirmed

DATE OF JUDGMENT:               March 27, 2025

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

JOSEPH A. PALMER                        TONY A. CLYMER
Muskingum County Prosecuting Attorney   1420 Matthias Drive
27 North Fifth Street                   Columbus, OH  43224
Zanesville, OH  43702

*Montgomery, J.*

**{¶1}** Defendant-appellant, Thomas Sharrer, appeals a jury verdict from the Muskingum County Court of Common Pleas finding him guilty of domestic violence. For the reasons set forth below, we affirm the trial court in all respects and overrule appellant's assignments of error.

## STATEMENT OF THE CASE

**{¶2}** On June 6, 2024, defendant-appellant, Thomas Sharrer ("appellant") was indicted on one count of Felonious Assault under R.C. 2903.11(A)(1), a felony of the second degree, one count of Domestic Violence under R.C. 2919.25(A) and (D)(4), a felony of the third degree, and two counts of Assault under R.C. 2903.13(A), misdemeanors of the first degree. Mr. Sharrer pled not guilty.

**{¶3}** On August 13 and 14, 2024, a jury trial took place. Several individuals testified on behalf of the State including Russell Smith, Teresa Temple, Eric Finley, Shanna Peterson-Smith, Deanna Peterson, Detective Phil Michel, and Caden Willy. Defense counsel fully cross-examined each witness and appellant testified on his own behalf. The jury received instructions and then began deliberations.

**{¶4}** After several hours of deliberation, the jury returned a verdict finding appellant guilty of (1) Domestic Violence against Deanna Peterson, a third-degree felony, (due to appellant's prior conviction for domestic violence), and (2) one count of first-degree misdemeanor Assault against Russell Smith. They found appellant not guilty of Felonious Assault against Deanna Peterson, and not guilty of a second count of misdemeanor Assault against Teresa Temple. Appellant was sentenced to 12 months in

prison for Domestic Violence and 180 Days of local incarceration for the Assault. The sentences were ordered concurrent; appellant received 123 days of jail time credit.

## STATEMENT OF FACTS

{¶5} Appellant and Deanna Peterson ("Deanna") were engaged to be married at the time of the events in question. During the early evening of May 31, 2024, appellant and Deanna were at Teresa Temple's home. Teresa Temple is Deanna's mom. Later, more people came to the house - everyone was drinking, hanging out, and there were no apparent problems. Deanna and her sister, Shanna Peterson-Smith were initially inside the house cooking some Alfredo pasta. Deanna admittedly consumed several alcoholic drinks that day. Deanna also has a history of seizures and takes medication to control them. Deanna has been hospitalized in the past year for seizure related incidents, and some incidents involved seizures and alcohol consumption together.

{¶6} Appellant was outside on the back deck with Russell Smith (Teresa's boyfriend) and Perry Smith (Deanna's brother-in-law), drinking a couple of beers and just relaxing. T. 182. At some point, Deanna brings out a bite of pasta on a fork for Perry to sample because he likes to cook like she does. When she offered the bite to Perry, appellant knocked Deanna's hand and knocked the fork out. According to Russell Smith, "that's when everything went crazy." T. 183, 214, 327. Appellant, who was already intoxicated, "got real mad and started cussing, yelling at everyone, ripped his shirt off and started throwing chairs out back, and then started walking through - - between the house and the garage and started hitting his head off of the garage * * * and punched himself in the face, calling all kinds of names." T. 183. Deanna and Teresa were following him towards the front of the house, trying to calm him down. Shanna began to videotape the

incident on her phone. T. 312. Shanna claimed it was for purposes of showing appellant the next day how ridiculous he was acting. Perry and Shanna followed Deanna and Teresa to the front and Russell joined as well.

{¶7} Everyone was shouting at each other but not fighting yet. Appellant and Perry were arguing and appellant threatened to hit Perry, but Perry backed up as if to avoid any altercation. Shanna made statements like, "punch me," and "You better take him home before he gets hurt." T. 253. The situation escalated very quickly. Deanna, Ms. Temple, and Russell continued to try and calm everyone down. Ms. Temple was in close proximity to appellant telling him to stop and "just go home" but, at some point, appellant pushed Ms. Temple's hands away. Two witnesses testified appellant also pushed Ms. Temple in the back as she turned away. T. 216.

{¶8} Deanna saw appellant's actions towards her mother and confronted appellant. Deanna shouted "you hit my Mom" and then Deanna struck appellant at least once in the face. Within seconds, appellant pulled his arm back and struck the side of Deanna's head. Deanna instantly fell to the ground and was not moving or responding. Ms. Temple testified he "knocked [Deanna] down to the - - - on the street, and she wasn't responding to nothing. We were talking to her and she wasn't responding. Q: Is she moving? A: No, she was not moving. I mean, I even had someone - - some came there, was looking at her, and said she's not breathing. And then I just - - I lost it." T. 217. Deanna then began having a seizure, such that her arms, legs, and head were smacking the concrete.

{¶9} After appellant struck Deanna, Perry went after appellant. The video demonstrates Russell trying to break up the fight and appellant hit Russell in the back of

the head. Russell took off his sweatshirt as if he was going to fight back, but then he walked away. Shanna eventually called 911 and an ambulance and the police arrived at the scene. The paramedics took Deanna to the hospital where she was treated for her injuries. Appellant was taken into police custody. Shortly after he arrived at the jail, appellant claimed he needed medical treatment because Perry injured him in their altercation. Appellant was transported to the hospital, checked out, and then quickly released and taken back to jail.

{¶10} Importantly, all the witnesses who testified on behalf of the State provided very similar accounts of what happened that day, with only minor variations. The witness accounts also correspond to the two video recordings, admitted as State exhibits 1 and 2.

{¶11} Appellant testified in his own defense. He contends he did not strike Ms. Temple but only moved her hands away. He stated the only reason he struck Deanna was because she struck him first and he was acting in self-defense. T. 429. Appellant further claimed 1) he was targeted by everyone at the house that day; 2) it was Shanna and Perry's fault for escalating the situation; 3) he feared for his own safety; and 4) he was seriously injured by Perry's assault on him. T. 410-411. Patrolman Eric Finley testified appellant had minor injuries such as a scratch on the elbow, several other scratches, blood on his right hand, and "possibly a busted lip." T. 281-282. Detective Phil Michel also testified that appellant may have been injured. T. 364-368.

{¶12} According to witness Cayden Willy, when appellant and Russell began fighting *after* appellant struck Deanna to the ground, appellant suffered a "beat down". T. 387. Shanna admitted that she perhaps escalated the situation by yelling at appellant

and videotaping the incident rather than calling the police. T. 312-314. Deanna admitted she should not have struck appellant. T. 344.

## ASSIGNMENTS OF ERROR

{¶13} "I. THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL AND COMMITTED PLAIN ERROR WHEN IT FAILED TO GIVE A JURY INSTRUCTION AS TO THE LESSER INCLUDED OFFENSE OF DISORDERLY CONDUCT WHEN THE EVIDENCE AT TRIAL WARRANTED THE INSTRUCTION

{¶14} II. THE APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL CONTRARY TO THE STATE AND FEDERAL CONSTITUTIONS

{¶15} III. THE GUILTY VERDICT FOR DOMESTIC VIOLENCE AGAINST APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW AS APPELLEE FAILED TO DISPROVE SELF-DEFENSE BEYOND A REASONABLE DOUBT."

## First Assignment of Error

{¶16} In the first assignment, appellant argues that the court committed "plain error" when it failed to include a jury instruction on the lesser included charge of disorderly conduct.  Importantly, defense counsel did not request any such instruction and did not object at trial on this ground.

{¶17} Generally, when a defendant does not request a specific jury instruction and fails to object to the jury instructions as given, he waives all but plain error. *State v. Underwood*, 3 Ohio St.3d 12, 444 N.E.2d 1332 (1983), syllabus. *State v. Williams*, 2024-Ohio-5578, ¶ 77.  Plain error is an obvious error or defect in the trial court proceedings, affecting substantial rights, which, "but for the error, the outcome of the trial court clearly would have been otherwise." *State v. Barton,* 2004-Ohio-3058, ¶ 46 (5th Dist.), quoting *State v. Underwood* (1983), 3 Ohio St.3d 12, 13; Crim. R. 52(B). Stated differently, the judgment of the trial court will not be overturned but for plain error and only to prevent a

manifest miscarriage of justice. *State v. Long,* 53 Ohio St.2d 91; *State v. Littrell*, 2014-Ohio-2130, 50 (5th Dist.).

**Jury Instruction on Lesser Included Offense**

**{¶18}** The first step in any "lesser included offense" analysis is called the "statutory-elements step." *State v. Houston*, 2017-Ohio-1122, ¶ 16-18 (10th Dist.), citing *State v. Deanda*, 2013-Ohio-1722, ¶ 6. It is a purely legal question where the court determines whether one offense is generally a lesser included offense of the charged offense based on certain factors. *Deanda*, ¶ 6, citing *State v. Kidder,* 32 Ohio St.3d 279, 281, 513 N.E.2d 311 (1987).

**{¶19}** In *Houston*, the Tenth District Court of Appeals reiterated the three factors a court must consider in determining whether a particular offense should be submitted to the finder of fact as a lesser included offense. *Houston,* ¶ 41, citing *State v. Evans,* 2009-Ohio-2974, ¶ 13; *Deanda*, ¶ 6.

> [A] court shall consider whether one offense carries a greater penalty than the other, whether some element of the greater offense is not required to prove commission of the lesser offense, and whether the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed.
>
> *Houston,* ¶ 16-18; *Evans*, ¶ 26; *see also* R.C. 2945.74; Crim.R. 31(C).

**{¶20}** Here, appellant was charged and convicted of violating R.C. 2919.25(A) and (D)(4). That section provides "no person shall **knowingly** cause or attempt to cause physical harm to a family or household member." (Emphasis added.) Physical harm means "any injury, illness, or other physiological impairment, regardless of its gravity or

duration." R.C. 2901.01(A)(3).[1] The elements of disorderly conduct as set forth in R.C. 2917.11(A)(1) are: "... to **recklessly** cause inconvenience, annoyance or alarm by engaging in fighting, threatening harm to persons or property, or in violent or turbulent behavior...." (emphasis added).

**{¶21}** Thus, domestic violence under (A) must (1) involve a family or household member and (2) the offender must "**knowingly**" cause or attempt to cause physical harm. These elements are not required for disorderly conduct. The statutory penalty for disorderly conduct is a misdemeanor of some degree, but domestic violence varies depending on the circumstances. Here, the penalty was elevated to a felony due to appellant's prior domestic violence convictions. Thus, the first two factors of the statutory elements test are met. Regarding the third factor, whether the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed, the *Houston* and *Walters* cases below are instructive.

**{¶22}** In *Houston*, the Tenth District Court of Appeals squarely held that disorderly conduct under R.C. 2917.11(A)(1) was a lesser included offense of domestic violence under R.C. 2919.25(A). *Houston*, ¶ 46. "In so holding, we note that, although there are some differences of opinion on this issue in Ohio, our view is the majority view and tends to comport with the updated test determined by the Supreme Court and set forth in *Evans* at ¶ 26." *Houston*, ¶ 46; (citations omitted); see also *State v. Hunt*, 1996 WL 132268 (5th Dist. Mar. 18, 1996) (holding that disorderly conduct under R.C. 2917.11 is a lesser included offense of domestic violence under R.C. 2919.25 (A) or (B).

---

[1] In addition, if the offender has been twice or more convicted of domestic violence or similar offenses, R.C. 2919.25(D) requires that a new conviction of the offense be elevated for purposes of sentencing. Appellant was charged with a violation of R.C. 2919.25(D)(4) due to his two prior convictions for domestic violence.

**{¶23}** In finding disorderly conduct as a lesser-included offense of domestic violence, the *Houston* court first stated that "it is axiomatic that committing assault also involves committing disorderly conduct." *Houston* at ¶ 44. The Court went on "[d]omestic violence in R.C. 2919.25(A) is essentially assault with the added element that the person assaulted is a "family or household member." Since committing assault necessarily involves the commission of disorderly conduct, "committing domestic violence (a nuanced form of assault) also involves committing disorderly conduct." *Id.*, citing *Cleveland Heights v. Cohen*, 2015-Ohio-1636, ¶ 46 (noting similarities between assault and domestic violence and concluding that the similarities provide support for the view that disorderly conduct is a lesser included of domestic violence). *Id.* at ¶ 45.

**{¶24}** In *State v. Walters*, the Fifth District agreed with the *Houston* court and held "[w]e likewise hold that disorderly conduct, as set forth in R.C. 2917.11(A) (1) is a lesser-included offense of domestic violence as set forth in R.C. 2919.25(A). *State v. Walters,* 2018-Ohio-3456, ¶ 50. Thus, here, we will similarly hold that disorderly conduct under R.C. 2917.11(A)(1) is a lesser included offense of domestic violence under R.C. 2919.25(A).

**{¶25}** However, "the mere fact that an offense is a lesser included offense of a charged offense does not mean that the court must instruct on both offenses." *Keith* at ¶ 35, citing *State v. Wilkins*, 64 Ohio St.2d 382, 387, 415 N.E.2d 303 (1980); *State v. Easley*, 2008-Ohio-468, ¶ 59 (10th Dist.).

"Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both

an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus. In making this determination, the court must view the evidence in a light most favorable to defendant. *State v. Smith*, 2000-Ohio-166; *State v. Wilkins*, 64 Ohio St.2d 382, 388, 415 N.E.2d 303, (1980) (other citations omitted).

*State v. Conway*, 2006-Ohio-791, ¶ 13.

**{¶26}** Thus, the second tier of the analysis looks to the evidence in a particular case and determines whether "a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense." *Evans* at ¶ 13, quoting *Shaker Hts. v. Mosely,* 2007-Ohio-2072, ¶ 11. Indeed, the *Houston* Court determined the trial court did not abuse its discretion in failing to instruct because under the facts of the case, the jury could *not* have reasonably concluded that defendant did not commit domestic violence. *Houston* at ¶ 49-50.

**{¶27}** The *Walters* court cautioned that "an instruction is not warranted every time *some* evidence is presented on a lesser-included offense. Rather, there must be 'sufficient evidence' to 'allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense.'" *Walters*, ¶ 52, quoting *State v. Shane*, 63 Ohio St.3d at 632-633; *Conway*, ¶ 134.

**{¶28}** Here, the key question is whether the jury could have found that appellant did not "knowingly" cause or attempt to cause physical harm to Deanna, such that the evidence would support an acquittal on the domestic violence charge. *Walters*, ¶ 54-55. *Houston*, ¶¶ 47-48. Appellant claims the jury could have found that the State failed to

prove he acted "knowingly," and therefore not guilty of domestic violence, but that he did act "recklessly," and guilty of disorderly conduct. We disagree with appellant.

{¶29} R.C. 2901.22(B) provides:

"[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist."

Subsection (C) provides that a person acts recklessly "when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶30} Viewing the evidence in the light most favorable to the appellant, a jury could not have reasonably concluded that appellant did not act "knowingly" when he struck Deanna's head with such force that it rendered her immediately unresponsive. Regardless of appellant's purpose, he was clearly aware that his conduct, a blow to another person's head, would probably cause a certain result – physical harm. *Conway*, ¶ 133. Deanna in fact suffered significant physical harm. Because appellant knew the consequences of his action in striking Deanna, the jury could not have reasonably determined that he acted recklessly rather than knowingly. Thus, appellant cannot demonstrate that he would be acquitted of domestic violence.

### Plain Error

{¶31} Importantly, in the cases cited above, defense counsel requested the instruction on a lesser included offense, but the trial court refused the instruction. Here,

defense counsel did not request any instruction on disorderly conduct as a lesser included offense and did not object at trial in this regard. Thus, appellant must demonstrate the trial court's failure to so instruct amounted to plain error and "the outcome of the trial court clearly would have been otherwise." *Barton*, ¶ 46 quoting *State v. Underwood*, 3 Ohio St.3d 12, 13 (1983). The judgment of the trial court will not be overturned but for plain error and only to prevent a manifest miscarriage of justice.

{¶32} Appellant fails to meet the high burden of plain error. Defense counsel made a strategical decision to proceed with an all-or-nothing defense, hoping that the circumstances of this case would force the jury to find appellant not guilty of domestic violence - or any other offense. Such strategical decisions do not support a reversal based on plain error. See *State v. Wine*, 2014-Ohio-3948, ¶ 30 (reiterating that defense counsel's decision not to request an instruction on lesser included offenses—seeking acquittal rather than inviting conviction on a lesser offense—was a matter of trial strategy and trial court's failure to instruct was not plain error), citing *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980). Indeed here, defense counsel secured acquittals on two of the four charges against him. **Thus, appellant's first assignment of error is overruled**.

## Second assignment of error

{¶33} In the second assignment of error, appellant maintains he was deprived of the effective assistance of counsel in failing to request a jury instruction for the lesser included offense of disorderly conduct. Appellant claims his counsel's failure to request the jury instruction set forth above was not the result of reasonable

professional judgment and was outside the range of professional competence. We disagree.

**{¶34}** The standard of review for ineffective assistance of counsel was set forth in the seminal case of *Strickland v. Washington,* 466 U.S. 668 (1984), and was discussed by this court in *Mansfield v. Studer,* 2012-Ohio-4840 (5th Dist.):

> A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, (1993); *Strickland v. Washington*, 466 U.S. 668 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989). In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance,* 556 U.S. 111 (2009).

**{¶35}** In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland* at 689. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland* at 689; *Studer,* at ¶¶ 58-61.

**{¶36}** Thus, to prevail on an ineffective assistance of counsel argument, appellant must establish **two** prongs: first, that his trial counsel's performance fell below an objective standard of reasonable representation involving a "substantial violation" of an

essential duty to appellant. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland* at 687. Second, appellant must demonstrate actual prejudice by such alleged ineffectiveness. In other words, is it a reasonable probability that *but for* counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland* at 691-696.

{¶37} Importantly, as stated above, an appellate court's review of trial counsel's actions and decisions is highly deferential and strategic or tactical decisions will not form a basis for an ineffective assistance of counsel claim. *Id.* at 689; *State v. Clayton*, 62 Ohio St.2d 45, 48-49 (1980); *State v. Mason*, 82 Ohio St.3d 144, 157-58 (1998) (stating that an appellate court may not second guess a trial counsel's strategy decisions).

{¶38} Here, just as appellant cannot demonstrate that the outcome would have been different as required for plain error, he cannot establish that "but for" counsel's failure to request a jury instruction, the result would be different. The evidence was clear - appellant – 5'11" and 180 pounds – struck Deanna and knocked her immediately to the ground rendering her unresponsive. Thus, even if the lesser included instruction was given, there is no guarantee that the jury would have even considered it given the physical harm to Deanna.[2] Accordingly, appellant's claim of ineffective assistance of counsel must fail. **Appellant's second assignment of error is overruled.**

### Third Assignment of Error

{¶39} In his third assignment of error, appellant argues the guilty verdict for domestic violence was against the manifest weight of the evidence and contrary to law

---

[2] Notably, based on appellant's defense counsel, the jury found him not guilty of felonious assault and one count of misdemeanor assault.

because the State failed to disprove self-defense beyond a reasonable doubt. Again, we must disagree.

**{¶40}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *State v. Williams*, 2003-Ohio-4396, ¶83. When a court of appeals reverses a judgment of a trial court as against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of conflicting testimony. *State v. Jordan*, 2023-Ohio-3800, at ¶ 17; *Thompkins* at 387; *Williams,* ¶ 60. The reviewing court must determine whether the jury clearly "lost its way and created such a manifest miscarriage of justice" that the conviction cannot stand, and a new trial must be ordered. *Id.*, quoting *State v. Group*, 2002-Ohio-7247, ¶ 77 (citations omitted).

**{¶41}** In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact. *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 21; *In re Z.C.*, 2023-Ohio-4703, ¶ 14. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the [trier of fact] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

**{¶42}** In *State v. Carney,* the Court determined that pursuant to the amended statute of self-defense, once a defendant shows some evidence to support a finding of self-defense, the prosecution must *disprove* self-defense beyond a reasonable doubt. *Carney*, 2020-Ohio-2691, ¶ 31 (10th Dist.), citing R.C. 2901.05(B)(l). The State must show that the defendant "(1) was at fault in creating the situation giving rise to the affray;

or (2) did not have a bona fide belief that he was in imminent danger of bodily harm for which the use of force was his only means of escape, or (3) did violate a duty to retreat or avoid the danger."

{¶43} Appellant would have this Court believe that he was not at fault in creating the situation because (1) other people were against him; (2) other individuals escalated the situation; and (3) because Deanna struck him first, he was justified in striking back because he had a bona fide belief he was in imminent danger. Appellant's arguments are without merit.

{¶44} The evidence demonstrates beyond a reasonable doubt that appellant is at fault for creating the situation. Appellant was very intoxicated on the day in question. Once Deanna offered a bite of food to Perry, appellant became agitated and knocked the fork out of Deanna's hand. Almost immediately, appellant's behavior became erratic and escalated to the point of him banging his head on a wall. Deanna, Ms. Temple, and Russell tried desperately to calm him down and encourage him to "just go home."

{¶45} Appellant did not calm down. Instead, appellant remains highly agitated and knocks Ms. Temple's hands down as she was trying to de-escalate. Appellant and Shanna saw these actions toward their mother and understandably got irritated. Indeed, Shanna made unnecessary comments and Deanna struck appellant at least one time, but even appellant testified he cannot be sure how "hard" Deanna hit him. Appellant pulled back and struck Deanna with such force that she immediately fell to the ground rendering her unresponsive.

{¶46} The State proved beyond a reasonable doubt that appellant was the one at fault in creating the situation and when Deanna struck appellant, he did not in turn have

a "bona fide belief" he was in "imminent danger of bodily harm for which the use of force was his only means of escape." The witness testimony is consistent and is supported by the video evidence. As such, the Court concludes the jury did not clearly lose its way in finding the State *disproved* self-defense beyond a reasonable doubt.

## CONCLUSION

{¶47} For the reasons set forth in this opinion, appellant's first, second, and third assignments of error are overruled in their entirety. The judgment of the Muskingum County Court of Common Pleas is affirmed.

By: Montgomery, P.J.

Popham, J. and

Gormley, J. concur.